**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW GROSS, III,** | : | **CIVIL NO. 1:15-CV-1529** |
| | : | |
| **Petitioner** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **WARDEN, USP CANAAN,** | : | |
| | : | |
| **Respondent** | : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) and supplemental petition (Doc. 20), pursuant to 28 U.S.C. § 2241 filed by petitioner Andrew Gross ("Gross"), a federal inmate currently confined at the United States Penitentiary, Canaan, in Waymart, Pennsylvania ("USP-Canaan"). Named as the sole respondent is the warden of USP-Canaan. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. Background

Gross raises several issues in the instant habeas petition. First, Gross claims that the BOP's Guidance Memorandum with respect to referrals and placements of inmates in a residential re-entry center ("RRC") under the Second Chance Act violates the Fifth Amendment, the Administrative Procedures Act ("APA"), the ex post facto clause and due process because it reduces the amount of time an inmate may serve in an RRC. (Doc. 1, at 5-10, 19). Gross claims that he accepted a plea

agreement on the expectation that he was eligible to serve his sentence in an RRC. (Id. at 8). Gross also alleges a violation of his equal protection rights. (Id. at 19).

Second, Gross alleges that the BOP incorrectly computed his federal sentence by failing to reinstate good conduct time in connection with three disciplinary incident reports. (Id. at 11-12). Due to the alleged miscalculation of his good conduct time, Gross claims the BOP has not properly calculated his home detention eligibility date. (Id. at 12).

Third, Gross alleges that the BOP erred by calculating his good conduct time based on time actually served rather than on the sentenced imposed, thereby lengthening his projected release date. (Id.)

Fourth, Gross claims the BOP's execution of his sentence violates the common law "Continuous Service" rule in that his second consecutive federal sentence should have commenced on the date that it was imposed in February, 2003, since he was in primary federal custody. (Id. at 16-18).

In the supplemental petition, Gross raises three additional claims. (Doc. 20). First, Gross alleges that the BOP removed him from the Residential Drug Abuse Program ("RDAP") for his refusal to sign RRC papers. (Id. at 7). Gross claims that he refused to sign the RRC papers because they required him to agree to a six-month RRC placement, and he believes that he requires more time in an RRC. (Id.) Gross claims that if he is permitted to restart the RDAP program, he will not receive credit for the time previously spent in the program, which lengthens his sentence. (Id. at 8). Second, Gross challenges his resentencing on February 15, 2006, wherein the sentencing court allegedly ordered the BOP to not permit him to contact his

family by email.  (<u>Id.</u> at 9).  Gross requests that the court release him to an RRC and restore his access to email.  (<u>Id.</u>)  Third, Gross claims the BOP incorrectly manipulated his male custody classification points based on the assessment of his criminal history and the failure to expunge an incident report in which he was charged with escape.  (<u>Id.</u> at 10-11).

## II.    <u>Discussion</u>

### A.    **Abuse of Writ Doctrine**

Respondent argues that Gross' challenge to the start date of his current sentence should be dismissed pursuant to the abuse of writ doctrine.  (Doc. 23, at 16-17).  Under the abuse of the writ doctrine, a federal court "may not reach the merits of: (a) <u>successive claims</u> that raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised, which constitute an <u>abuse of the writ</u>; or (c) <u>procedurally</u> defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims", unless a habeas petitioner shows cause and prejudice or a fundamental miscarriage of justice.  <u>Sawyer v. Whitley</u>, 505 U.S. 333, 338 (1992) (citations omitted) (emphasis in original).  The government bears the burden of pleading abuse of the writ.  <u>See</u> <u>McCleskey v. Zant</u>, 499 U.S. 467, 494-95 (1991); <u>Zayas v. I.N.S.</u>, 311 F.3d 247, 254 (3d Cir. 2002).  The burden to disprove abuse then becomes the petitioner's, who must make a "colorable showing of factual innocence." <u>Furnari v. Parole Com'n</u>, 531 F.3d 241, 251 (3d Cir. 2008).

A review of <u>Gross v. Berkebile</u>, No. 7:10-CV-00095, 2011 WL 13874 (E.D. Ky. Jan. 4, 2011), reveals that Gross similarly challenged the start date of his current

sentence.  In that case, Gross claimed that the BOP incorrectly determined the start date for his 120-month sentence in Case No. 02-08163 and he sought a credit for time served toward the completion of his sentence in Case No. 01-80769.  Id.  Gross also asserted that he was eligible to serve the remainder of his sentence in an RRC.  Id.  The court determined that Gross' 120-month sentence in Case No. 02-08163 could not commence until the date he completed his 84-month sentence in Case No. 01-80739 because such a computation would violate 18 U.S.C. § 3585(b) by giving him double credit for time that was already credited toward the service of another sentence.  Id.  The court also determined that even if Gross' claim that the sentencing court intended that he serve his sentence in an RRC was correct, the BOP has complete discretion to place an inmate at its choice of institutions.

Because the Eastern District of Kentucky Court previously ruled on this issue and rendered a decision on the merits, Gross' instant claim challenging the start date of his current sentence is barred by the abuse of writ doctrine and will be dismissed.

### B.    Exhaustion of Administrative Review

Respondent next argues that the claims concerning Gross' RRC placement and the BOP's failure to reinstate good conduct time after expungement of three disciplinary incident reports should be denied based on Gross' failure to comply with the BOP's administrative review process.  (Doc. 23, at 18-22).  Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241.  See Callwood v. Enos, 230 F.3d 627, 634 (3d

4

Cir. 2000); <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757, 760 (3d Cir. 1996).

Exhaustion is required "for three reasons: (1) allowing the appropriate agency to

develop a factual record and apply its expertise facilitates judicial review; (2)

permitting agencies to grant the relief requested conserves judicial resources; and

(3) providing agencies the opportunity to correct their own errors fosters

administrative autonomy." <u>Moscato</u>, 98 F.3d at 761-62 (citing <u>Bradshaw v. Carlson</u>,

682 F.2d 1050, 1052 (3d Cir. 1981)).  Nevertheless, exhaustion of administrative

remedies is not required where exhaustion would not promote these goals.  <u>See,</u>

<u>e.g.</u>, <u>Gambino v. Morris</u>, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required

where petitioner demonstrates futility); <u>Lyons v. U.S. Marshals</u>, 840 F.2d 202, 205

(3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of

the agency clearly and unambiguously violate statutory or constitutional rights, or if

the administrative procedure is clearly shown to be inadequate to prevent

irreparable injury"); <u>Carling v. Peters</u>, No. 00-2958, 2000 WL 1022959, at *2 (E.D. Pa.

July 10, 2000) (exhaustion not required where delay would subject petitioner to

"irreparable injury").

In general, the BOP's administrative review remedy program is a multi-tier

process that is available to inmates confined in institutions operated by the BOP for

review of an issue which relates to any aspect of their confinement.  28 C.F.R. §§

542.10, *et seq*.  With respect to disciplinary hearing decision appeals, a BOP inmate

can initiate the first step of the administrative review process by filing a direct

written appeal to the BOP's Regional Director (thus bypassing the institutional

level of review) within twenty days after receiving the DHO's written report.  28

C.F.R. § 542.14(d)(2). If dissatisfied with the Regional Director's response, a Central

Office Appeal may then be filed with the BOP's Office of General Counsel. 28

C.F.R. § 542.15(a). This is the inmate's final available administrative appeal.

### 1. *RRC Placement*

On November 30, 2008, Gross submitted two administrative remedies,

numbers 515322-F1 and 515324-F1, at the institution requesting placement in a

community corrections center ("CCC"). (Doc. 23-2, Ex. 1, Attach. 1, Administrative

Remedy Generalized Retrieval, at 46). On November 24, 2008, the warden denied

Administrative Remedy 515322-F1. Id. On December 22, 2008, Gross appealed

Administrative Remedy 515322 to the Regional Office, designated as Administrative

Remedy 515322-R1. Id. at 48. On January 13, 2009, the Regional Director denied

the appeal. Id. Gross did not appeal any further.

On December 9, 2008, the warden denied Administrative Remedy 515324-F1.

Id. at 46. On December 22, 2008, Gross appealed Administrative Remedy 515324 to

the Regional Office, designated as Administrative Remedy 515324-R1. Id. at 49. On

January 13, 2009, the Regional Director closed the appeal. Id. Gross did not appeal

any further.

On November 30, 2008, Gross attempted to submit a third administrative

remedy directly to the Regional Office, number 515959-R1. Id. at 47. The Regional

Office rejected Administrative Remedy 515959-R1 because the topic of his request

was not sensitive. Id. Gross filed no additional administrative remedies concerning

his request for CCC or RRC placement at any level. Id. at 45-110.

It is clear that Gross failed to properly utilize the administrative review process concerning the claim related to his RRC placement. (Doc. 23-2, Ex. 1, Declaration of Susan Albert, BOP Paralegal Specialist ("Albert Decl.") at ¶ 13; Administrative Remedy Generalized Retrieval). Gross filed appeals to the Regional Office level, but stopped the appeal process before completion and did not file any appeals to the BOP General Counsel, which would have been his final administrative appeal. 28 C.F.R. § 542.15. Instead, Gross filed the instant petition.

Gross argues that he should be excused from the exhaustion requirement because it is not statutorily required and it would have been futile. (Doc. 24, at 1-2). However, as stated above, although not statutorily required, courts have routinely required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241. See Callwood, 230 F.3d at 634; Moscato, 98 F.3d at 760. Moreover, Gross cannot avoid the exhaustion requirement by simply stating that exhausting the administrative remedies would be futile. Melchiorre v. Martinez, No. 09-1123, 2009 WL 3241678, at *3 (M.D. Pa. Sept. 30, 2009) (stating that "exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark"). The Third Circuit Court of Appeals has stated that when discretionary prison decisions regarding RRC placement are examined, exhaustion is required before a prisoner may proceed to federal court. Vasquez v. Strada, 284 F.3d 431, 434 (3d Cir. 2012). Consequently, Gross' claim concerning his request for placement in an RRC will be dismissed based on failure to exhaust administrative remedies.

### 2.    *Incident Report 1868010*

On May 12, 2009, Gross was charged in Incident Report 1868010 with interfering with security devices. (Doc. 23-2, Ex. 2, Attach. 9, Chronological Disciplinary Record, at 9). On June 10, 2010, a Discipline Hearing Officer ("DHO") determined that Gross committed the prohibited act of interfering with security devices. (Id.) The DHO imposed sanctions that included the disallowance of twenty-seven days good conduct time and forfeiture of twenty-seven days non-vested good conduct time. (Id.) On May 4, 2010, Gross filed Administrative Remedy 588468-F1 at the institution requesting expungement of the incident report. (Albert Decl. ¶ 4; Doc. 23-2, Ex. 1, Attach. 1, Administrative Remedy Generalized Retrieval, at 53). On May 14, 2010, the warden denied Administrative Remedy 588468-F1. (Id.) On June 3, 2010, Gross appealed Administrative Remedy 588468-R1 to the Regional Office level. (Albert Decl. ¶ 5; Doc. 23-2, Ex. 1, Attach. 1, Administrative Remedy Generalized Retrieval, at 55). On November 1, 2010, the Regional Director partially granted the appeal and remanded the incident report back to the institution for re-investigation. (Id.; see also Doc. 1-2 at 22, Response to Administrative Remedy 588468-R1). On November 29, 2010, Gross filed an appeal at the Central Office level, designated as Administrative Remedy 588468-A1. (Albert Decl. ¶ 6; Doc. 23-2, Ex. 1, Attach. 1, Administrative Remedy Generalized Retrieval, at 60). On December 20, 2010, the Central Office rejected the remedy appeal because it was not legible. Id. Gross was advised to consider rewriting the appeal with exact wording. Id. On February 8, 2011, Gross filed an appeal at the Central Office level, designated as Administrative Remedy 588468-A2. (Albert Decl. ¶ 7; Doc. 23-2, Ex. 1, Attach. 1,

Administrative Remedy Generalized Retrieval, at 62).  On February 15, 2011, the Central Office again rejected the remedy appeal because it was not legible.  Id.  The Central Office advised Gross that all pages must be legible.  Id.  Gross did not file any other remedies or appeals of Administrative Remedy 588468.  (Albert Decl. ¶ 8; Doc. 23-2, Ex. 1, Attach. 1, Administrative Remedy Generalized Retrieval, at 62-110).  Instead of following the directives of the Central Office, Gross abandoned the appeal.

On May 4, 2011, the DHO upheld the original sanctions imposed with respect to Incident Report 1868010.  (Doc. 23-2, Ex. 2, Attach. 9, Chronological Disciplinary Record, at 9).  On July 22, 2011, Gross filed Administrative Remedy 648932-R1 to appeal the DHO's May 4, 2011 decision.  (Doc. 23-2, Ex. 1, Attach. 1, Administrative Remedy Generalized Retrieval, at 63).  On July 22, 2011, the Regional Director denied the appeal.  Id.  Gross did not appeal Administrative Remedy 648932-R1 to the Central Office level.  Id. at 63-110.  Thus, the record clearly reflects that Gross did not properly complete the administrative remedy appeal process concerning the sanctions imposed with respect to Incident Report 1868010 and this claim will be dismissed.

### 3.     *Incident Report 2556504*

On April 24, 2014, Gross filed Administrative Remedy 776671-R1 to appeal the DHO decision concerning Incident Report 2556504.  (Albert Decl. ¶ 9; Doc. 23-2, Ex. 1, Attach. 1, Administrative Remedy Generalized Retrieval, at 95).  On June 23, 2014, the Regional Director responded to Administrative Remedy 776671-R1 and indicated that the incident report was returned to the DHO due to a procedural

error.  (Id.; see also Doc. 1-2 at 24, Response to Administrative Remedy 776671-R1).

On July 17, 2014, the incident report was expunged.  (Doc. 1-2, at 28-30).

Nevertheless, on September 5, 2014, Gross submitted Administrative Remedy

776671-R2 to the Regional Office and requested that his good conduct time be

restored.  (Albert Decl. ¶ 10; Doc. 23-2, Ex. 1, Attach. 1, Administrative Remedy

Generalized Retrieval, at 103).  This administrate remedy was untimely, as it was

submitted beyond the thirty days permitted by 28 C.F.R. § 542.15.  Id.  However, the

Regional Office incorrectly rejected Administrative Remedy 776671-R2 as an

administrative remedy submitted concerning a topic that was not sensitive.  Id.

Regardless, Gross did not resubmit this administrative remedy or file an appeal to

the Central Office.  (Doc. 23-2, Ex. 1, Attach. 1, Administrative Remedy Generalized

Retrieval, at 103-11).

With respect to this incident report, Gross was initially successful at the

Regional Level in that the matter was remanded to the DHO for further

proceedings.  Following remand, the DHO expunged the incident report.  Gross

then filed an unsuccessful appeal with the Regional Office, but failed to appeal the

decision of the Regional Director.  Accordingly, the court will dismiss this claim

because Gross did not properly complete the administrative remedy appeal process

with respect to Incident Report 2556504.

### 4.    *Incident Report 2634977*

On February 23, 2015, Gross filed Administrative Remedy 811393-R1 to

appeal the DHO decision concerning Incident Report 2634977.  (Albert Decl. ¶ 11;

Doc. 23-2, Administrative Remedy Generalized Retrieval, Ex. 1, Attach. 1, at 107).

The Regional Director expunged the incident report from Gross' record. (Doc. 1-2, at 26). On May 4, 2015, Gross nevertheless filed an appeal to the Central Office, designated as Administrative Remedy 811393-A1. (Albert Decl. ¶ 12; Doc. 23-2, Administrative Remedy Generalized Retrieval, Ex. 1, Attach. 1, at 12). At this point, rather than waiting to receive a response to Administrative Remedy 811393-A1, Gross filed the instant habeas petition on June 10, 2015. Id. Gross did not file any additional administrative remedies at the Central Office level complaining that the BOP failed to restore the good conduct time taken in connection with Incident Report 2634977. (Doc. 23-2, Administrative Remedy Generalized Retrieval, Ex. 1, Attach. 1, at 107-110). The record reflects that Gross did not properly complete the administrative remedy appeal process with respect to this incident report. Consequently, the court will dismiss the claim challenging Incident Report 2634977.

### 5. *Claims in the Supplemental Petition*

On November 23, 2015, Gross filed a supplement to the habeas petition. (Doc. 20). In the supplement, Gross claims that he was required to restart the RDAP program in September 2015, and that he was dismissed from the RDAP program on November 8, 2015. (Id.) These events occurred after the filing of the original petition in June 2015. Thus, Gross could not have exhausted these claims before filing this action. It is clear that these claims are premature under the standards set forth in Moscato. Further, he has not alleged facts that would permit the court to find that exhaustion would have been futile, or that requiring exhaustion would subject him to "irreparable injury." Accordingly, these claims will be dismissed for failure to exhaust administrative remedies.

11

## C. Sentence Computation Claim

Gross next challenges his sentence calculation and contends that he is entitled to additional credit against his federal sentence and that the BOP miscalculated his good conduct time. (Doc. 1). The Attorney General is responsible for computing federal sentences, see 18 U.S.C. § 3585; United States v. Wilson, 503 U.S. 329, 333 (1992); Armstrong v. Grondolsky, 341 F. App'x 828 (3d Cir. 2009), and has delegated that authority to the BOP under 28 C.F.R. § 0.96. Computation of a federal sentence is governed by 18 U.S.C. § 3585, and is comprised of a two-step determination. First, the date on which the federal sentence commences and, second, the extent to which credit may be awarded for time spent in custody prior to commencement of the sentence ("prior custody credit").

### 1. Commencement of Sentence

The BOP generally determines the date upon which a federal sentence commences. See, e.g., Goodman v. Grondolsky, 427 F. App'x 81, 82 (3d Cir. 2011) ("In calculating a federal sentence, the BOP first determines when the sentence commenced and then determines whether the prisoner is entitled to any credits toward his sentence."). A federal sentence cannot commence earlier than the date on which it was imposed. Rashid v. Quintana, 372 F. App'x 260, 262 (3d Cir. 2010), citing, United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir. 1998); see also BOP Program Statement 5880.28, Chapt. 1, pp. 12-13.

Section 3585 of Title 18 of the United States Code provides, in part:

(a) Commencement of sentence. A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence

service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

Gross' federal sentence commenced on July 23, 2002, the date his first sentence was imposed in Case No. 01-CR-80769.

### 2. *Prior Custody Credit*

Section 3585(b) of Title 18 of the United States Code provides:

(b) Credit for prior custody. - A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-

>   (1) as a result of the offense for which the sentence was imposed; or
>
>   (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585(b). Thus, under § 3585(b), prior custody credit cannot be granted if the prisoner has received credit toward another sentence. The Supreme Court has made clear a defendant cannot receive a "double credit" for his detention time. Wilson, 503 U.S. at 337.

On June 19, 2000, Gross appeared before a magistrate judge in the United States District Court for the Eastern District of Michigan pursuant to an indictment in Case No. 00-M-80058-DT for charges of mail fraud. (Doc. 23-2, Ex. 2, Declaration of J.R. Johnson, BOP Correctional Programs Specialist ("Johnson Decl."), at ¶ 3). Gross was released on bond that same day. Id. On June 30, 2000, these charges were dismissed. Id.

On November 3, 2000, Gross was arrested on fraud charges in Case No. 01-CR-80769. (Johnson Decl. ¶ 4; Doc. 23-2, Ex. 2, Attach. 2, USMS Individual Custody and Detention Report). On November 3, 2000, Gross was released on bond. Id. On March 11, 2002, while on bond in Case No. 01-CR-80769, Gross was arrested for additional fraud activity in Case No. 02-CR-80163. (Johnson Decl. ¶ 5).

On July 23, 2002, the United States District Court for the Eastern District of Michigan sentenced Gross to 84 months' imprisonment for mail fraud, credit card fraud and identity theft in Case No. 01-CR-80769. (Johnson Decl. ¶ 6; Doc. 23-2, Ex. 2, Attach. 4, Judgment in a Criminal Case, No. 01-CR-80769, at 1-2). On February 12, 2003, Gross was sentenced to a 120-month term of imprisonment in Case No. 02-CR-80163. (Johnson Decl. ¶ 7; Doc. 23-2, Ex. 2, Attach. 5, Judgment in a Criminal Case, No. 02-CR-80163, at 1-2). The court ordered that the sentences in Case Nos. 01-CR-80769 and 02-CR-80163 be served consecutively. Id. The BOP aggregated the sentences for a total of 204 months' confinement. (Johnson Decl. ¶ 8; Doc. 23-2, Ex. 2, Attach. 6, Sentence Monitoring Computation Data). The sentence was calculated to commence on the date the first sentence was imposed, July 23, 2002. Id. Gross received prior custody credit for his arrest and release on June 19, 2000, and for his arrest and release on bond on November 3, 2000. Id. Gross also received prior custody credit for an arrest and release on May 25, 2001, and from November 26, 2001 until November 28, 2001. Id. Gross' projected satisfaction date was September 20, 2017. Id.

Gross thereafter appealed his judgment of conviction and sentence. On August 5, 2005, the Sixth Circuit Court of Appeals vacated Gross' sentence in Case

No. 02-CR-80163 and remanded the case for resentencing. (Johnson Decl. ¶ 9; Doc. 23-2, Ex. 2, Attach. 7, <u>United States v. Gross</u>, No. 03-1266 (6th Cir. Aug. 5, 2005)). On February 15, 2006, the United States District Court for the Eastern District of Michigan re-sentenced Gross to a 120-month term of imprisonment for counterfeit securities in Case No. 02-CR-80163, to be served consecutively to the term of imprisonment in Case No. 01-CR-80769. (Johnson Decl. ¶ 10; Doc. 23-2, Ex. 2, Attach. 8, Amended Judgment in a Criminal Case, No. 02-CR-80163). There were no changes to the term of imprisonment originally ordered in Case No. 02-CR-80163 on February 12, 2003; therefore, no changes were made to Gross' sentence computation as a result of the re-sentencing. (Johnson Decl. ¶ 10).

The BOP determined that Gross's sentence in Case No. 02-CR-80163 commenced upon the completion of his sentence in Case No. 01-CR-80769 because all of the time spent for the prosecution of Case No. 02-CR-80163, and after the imposition of the sentence in Case No. 02-CR-80163, were credited toward the service of the first sentence (Case No. 01-CR-80769). Pursuant to 18 U.S.C. § 3585(b), the court finds that the BOP properly computed Gross' sentence, including any time for prior custody, and his claims to the contrary are without merit.

Gross further claims that the BOP violated the common law of "Continuous Service." Title 18 U.S.C. § 3584(c) states that, "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." (Johnson Decl. ¶ 17; Doc. 23-2, Ex. 2, Attach. 15, Excerpt from Program Statement 5880.28). Gross' 84 month sentence was imposed on July 23, 2002. <u>Id.</u> On February 12, 2003, Gross was

sentenced in his second federal case to 120 months' incarceration, consecutive to his first federal sentence.  Id.  Both terms were administratively aggregated for a total aggregate term of 204 months' imprisonment.  Id.  The court thus finds that the BOP correctly computed the two sentences as one aggregate term of imprisonment, in accordance with 18 U.S.C. § 3584(c).

### 3.    *Good Conduct Time*

Gross claims that the BOP miscalculated his good conduct time on the basis of time actually served rather than the sentence imposed.  The BOP awards good conduct time in accordance with Title 18 U.S.C. § 3624(b), which provides:

> [A] prisoner who is serving a term of imprisonment of more than 1 year[,] other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . . Credit that has not been earned may not later be granted. . . . credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

18 U.S.C. § 3624(b)(1).  The BOP interprets the statute as allowing fifty-four days of good conduct time "for each year served."  28 C.F.R. § 523.20.  The BOP utilizes a formula for calculating good conduct time which takes into account the fact that an inmate's time actually served becomes incrementally shorter each year as he is awarded good conduct time.  See O'Donald v. Johns, 402 F.3d 172, 173 (3d Cir. 2005) (citing White v. Scibana, 390 F.3d 997, 999-1000 (7th Cir. 2004)).  In O'Donald, the Third Circuit determined that the phrase "term of imprisonment" in 18 U.S.C. § 3624(b) is ambiguous, but found that it must defer to the BOP's interpretation if it is

16

reasonable.  <u>O'Donald</u>, 402 F.3d at 174 (citing <u>Chevron, U.S.A., Inc. v. Natural Res.</u>

<u>Def. Council</u>, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); <u>Stiver v. Meko</u>,

130 F.3d 574, 577 (3d Cir. 1997)).  Thus, the Third Circuit in <u>O'Donald</u> concluded

that the District Court properly rejected petitioner's challenge to the BOP's

calculation of good conduct time based upon the time actually served. Because the

Third Circuit has squarely rejected Gross' argument that the BOP erred by

calculating his good conduct based upon the amount of time actually served, rather

than on the overall length of the sentence, the court will deny this claim.

Gross earned fifty-four days of good conduct time at the end of each complete

year served.  (Johnson Decl. ¶ 14).  The remaining portion of each year was prorated

to forty-three days of good conduct time.  <u>Id.</u>  After applying fifty-four annual good

conduct time days upon completion of each year of the term, there were 338 days

remaining to serve on Gross' sentence.  (Johnson Decl. ¶ 15; Doc. 23-2, Ex. 2, Attach.

13, Computation of Good Conduct Time).  The sum of 338 days was then multiplied

by .148.  <u>Id.</u>  The sum of that number is subtracted from the 338 days remaining on

the term until the numbers repeat.  <u>Id.</u>  This calculation resulted in forty-three days

of prorated good conduct time towards Gross' 204 month sentence.  <u>Id.</u>  This would

have resulted in a projected satisfaction date of December 25, 2016.  <u>Id.</u>  However,

Gross received disciplinary infractions and was sanctioned with the disallowance

and forfeiture of 668 days of good conduct time.  (Johnson Decl. ¶ 16; Doc. 23-2, Ex.

2, Attach. 14, Sentence Monitoring Computation Data as of Nov. 10, 2015).  Thus,

Gross has a projected satisfaction date of March 16, 2018.[1]  Id.  The court finds that the BOP correctly applied fifty-four annual good conduct time days upon the completion of each year of Gross' term.

Gross further claims that the BOP failed to re-credit him for good conduct time lost for disciplinary incident reports that were subsequently expunged from his prison record and that the BOP retook good conduct time after a re-hearing for Incident Report 1868010.  The BOP conducted a review of all Gross' sanctions, disallowances, and forfeitures.  (Johnson Decl. ¶ 11; Doc. 23-2, Ex. 2, Attach. 9, Sentence Monitoring, Good Time Data and Chronological Disciplinary Record).  Incident Report 168010 was originally heard on June 10, 2009.  Id.  Twenty-seven days of good conduct time were disallowed, and twenty-seven days good conduct time were forfeited from the previous year's earnings.  Id.  As a result of Administrative Remedy number 588468-R1, a re-hearing was conducted on May 4, 2011, with respect to Incident Report 1868010.  Id.  The original sanction was upheld and a note on Gross' Chronological Disciplinary Record stated, "Do Not Retake."  Id.  The record reflects that all good conduct time disallowances and forfeitures were only taken once, as directed.  (Johnson Decl. ¶ 11; Doc. 23-2, Ex. 2, Attach. 10, Chronologic Disciplinary Log (Goodtime)).  Based on the foregoing, the court finds that Gross' sentence calculation was properly computed.

---

[1] As of November 10, 2015, Gross was scheduled for early release by way of a reduction pursuant to 18 U.S.C. § 3621(e), which provides for a sentence reduction of up to one year as an incentive for completing substance abuse treatment. (Johnson Decl. ¶ 16; Doc. 23-2, Ex. 2, Attach. 14, Sentence Monitoring Computation Data as of Nov. 10, 2015).

### D. Challenge to RRC Placement

On April 9, 2008, the Second Chance Act of 2007, Pub.L. No. 110-199, Title II,

§ 251, 122 Stat. 657, 697 ("Second Chance Act"), codified at 18 U.S.C. §§ 3621, 3624,

went into effect. The Act contains provisions designed to aid prisoners in their

return to society outside of prison and increases the duration of pre-release

placement in a RRC from six (6) to twelve (12) months. 18 U.S.C. § 3624(c)(1),

(c)(6)(C). The BOP's policies provide that, ordinarily, recommendations for RRC

placements are first reviewed with the inmate and the prisoner's Unit Team

approximately seventeen (17) to nineteen (19) months prior to the inmate's probable

release date. Id. Referrals are made to the Community Corrections Manager, who

coordinates the placements. Id. Each inmate recommendation and referral is

conducted with the understanding that inmates are entitled to a maximum RRC

placement of twelve months, but that specific RRC placement recommendations

should be based on an individualized assessment of the criteria set forth in 18

U.S.C. § 3621(b), including a particular inmate's needs for services, public safety,

and the BOP's need to manage its inmate population responsibly. Id. When

assessing an inmate for an RRC recommendation, the prison Unit Team must

review the resources of the facility contemplated, the nature and circumstances of

the inmate's offense, the inmate's history and characteristics, any statement of the

court that imposed the sentence, and any pertinent policy statement issued by the

U.S. Sentencing Commission. Id. The inmate's institutional conduct and

programming are also an important part of this assessment process, and are

considered to determine whether additional RRC time is warranted as an incentive for positive behavior by the inmate under 42 U.S.C. § 17541.

At the time Gross filed the instant habeas petition, he had not yet been referred for RRC placement. (Ferraro Decl. ¶ 9). However, subsequent to the filing of the petition and supplement, the BOP approved Gross for a nine-month RRC placement that was scheduled to commence on June 22, 2017, at the Cherry Health Community Treatment Center in Detroit, Michigan. (Doc. 29, at 3-4; Doc. 29-1, at 1). On May 26, 2017, Gross' Unit Team informed him of the decision to revoke the RRC placement because he was expelled from RDAP for failing to adhere to the program requirements. (Doc. 29, at 2). On June 6, 2017, Gross filed a motion seeking mandamus and injunctive relief concerning the BOP's decision to revoke his approved placement in a RRC. (Doc. 29). Gross filed his motion seeking mandamus relief one week after his Unit Team informed him of the decision to revoke his RRC placement. The court concludes that Gross could not have exhausted his administrative remedies with respect to his RRC placement, as required by 28 C.F.R. § 542.10.

When presented with similar habeas claims seeking placement in a residential setting under the Second Chance Act, courts within this district have consistently concluded that "[e]xhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark, which is simply a statutory maximum and not a mandate." Ross v. Martinez, No. 09-1770, 2009 WL 4573686, at *3 (M.D. Pa. Dec. 1, 2009). Accordingly, this court has consistently

rejected habeas petitions brought under the Second Chance Act when inmates have failed to exhaust their administrative remedies.  See, e.g., Bisulca v. Schism, No. 09-2552, 2010 WL 1805394 (M.D. Pa. May 5, 2010); McCooey v. Martinez, No. 09-1533, 2010 WL 411744 (M.D. Pa. Jan. 25, 2010); Lacy-Thompson v. Martinez, No. 09-1320, 2009 WL 4823875 (M.D. Pa. Dec. 14, 2009); Ferris v. Holt, No. 09-1465, 2009 WL 3260557 (M.D. Pa. Oct. 8, 2009).

Because Gross has not exhausted his administrative remedies and has not shown that his failure to do so is excusable, the court will dismiss this claim without prejudice to the filing of a new § 2241 petition after Gross exhausts his administrative remedies.

### E.        Claims not Cognizable in a Federal Habeas Corpus Action

Gross disputes his custody classification score and requests access to Trulincs email privileges.  (Doc. 20, at 9).  A habeas petition may be brought by a prisoner who seeks to challenge either the fact or duration of his confinement. Preiser v. Rodriguez, 411 U.S. 45, 494 (1973); Tedford v. Hepting, 990 F.2d 745, 748 (3d Cir. 1993).  "Habeas relief is clearly quite limited: 'The underlying purpose of proceedings under the 'Great Writ' of habeas corpus has traditionally been to 'inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful.'"  Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002) (quoting *Powers of Congress and the Court Regarding the Availability and Scope of Review*, 114 Harv.L.Rev. 1551, 1553 (2001)).  However, when seeking to impose liability due to the deprivation of any rights, privileges, or immunities secured by

the Constitution and laws, the appropriate remedy is a civil rights action. <u>See</u> <u>Leamer</u>, 288 F.3d at 540. "Habeas corpus is not an appropriate or available federal remedy." <u>See</u> <u>Linnen v. Armainis</u>, 991 F.2d 1102, 1109 (3d Cir. 1993).

Gross' claims related to his BOP custody classification and access to Trulincs email privileges are challenges to the conditions of his confinement, and not the legality of his detention or the sentence. <u>See</u> <u>Levi v. Ebbert</u>, 2009 WL 2169171 at *5-7 (M.D. Pa. July 20, 2009) (claims which pertain to an inmate's custodial classification scores are not cognizable in a federal habeas petition), <u>aff'd</u> 353 F. App'x 681 (3d Cir. 2009); <u>McCall v. Ebbert</u>, 384 F. App'x 55 (3d Cir. 2010) (district court properly dismissed for lack of jurisdiction § 2241 petition challenging transfer to increased security level and conditions of confinement). Because these claims do not affect the duration of Gross' confinement, they are not cognizable in a habeas petition. Therefore, the court will dismiss these claims without prejudice to any right Gross may have to assert these claims in a properly filed complaint pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

## III.    <u>Conclusion</u>

Based on the foregoing, Gross' claims challenging the computation of his consecutive sentences and his claim that he is eligible to serve his sentence in an RRC will be dismissed pursuant to the abuse of writ doctrine. Gross' claims requesting placement in an RRC and reinstatement of good conduct time after expungement of three disciplinary incident reports will be dismissed based on failure to exhaust administrative remedies. Gross' claims challenging his sentence

computation and the computation of his good conduct time will be denied, and the challenge to his RRC placement will be dismissed. The claims challenging Gross' conditions of confinement, i.e., custody classification score and access to email privileges, will be dismissed without prejudice.

An appropriate order will issue.


 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        January 24, 2018